# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Sorrell Canady,
    Petitioner,

vs.

Case No. 1:08cv89
(Barrett, J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1, Attachment #1) and respondent's "Answer/Return Of Writ" (Doc. 7).

### Procedural Background

On February 9, 2005, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with one count of aggravated vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(1); one count of vehicular assault in violation of Ohio Rev. Code § 2903.08(A)(2); one count of failure to stop and remain at the scene of an accident in violation of Ohio Rev. Code § 4549.02; and one count of escape in violation of Ohio Rev. Code § 2921.34(A). (Doc. 7, Ex. 1).

On May 12, 2005, petitioner entered a guilty plea to the aggravated vehicular assault, failure to stop and escape charges in exchange for the dismissal of the vehicular assault charge and a stipulated mandatory prison sentence of seven (7) years.

(*See id.,* Exs. 2-3).[1] On the same date, the trial court sentenced petitioner in accordance with the terms of the parties' plea agreement to the mandatory seven-year prison term. (*Id.,* Ex. 5).

Petitioner did not timely appeal his conviction or sentence. On March 23, 2006, he filed a *pro se* motion for delayed appeal with the Ohio Court of Appeals, First Appellate District, which was granted "only as to the issue of whether [petitioner's] plea was voluntary." (*Id.,* Exs. 6-7).

With the assistance of counsel who was appointed to represent petitioner on appeal (*see id.,* Ex. 7), petitioner filed a brief raising the following assignments of error:

> 1. The trial court erred to Canady's prejudice by accepting his guilty plea to an agreed sentence which was not knowing and voluntarily made due to the sentence being contrary to law.
>
> 2. Sorrell Canady maintains his guilty plea was not knowingly and voluntarily made [because he was "coerced and deceived by trial counsel into signing the guilty plea document" and the "sentence imposed by the trial court was in violation of *State v. Foster, Blakely v. Washington, U.S. v. Booker.*"]

(*Id.,* Ex. 8). On January 26, 2007, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*See id.,* Ex. 10).

Proceeding *pro se,* petitioner timely appealed to the Ohio Supreme Court. (*Id.,* Ex. 11). He asserted two propositions of law in his memorandum in support of jurisdiction:

> 1. Defendant-appellant['s] plea[] was unconstitutional because it was made under a sentencing procedure declared unconstitutional by *State v. Foster,* ... 845 N.E.2d 470 [(Ohio 2006).]

---

[1] Specifically, the parties agreed to the imposition of the following concurrent prison terms: seven (7) years for the second-degree-felony aggravated vehicular assault offense; six (6) months for the fifth-degree-felony failure to stop offense; and two (2) years for the second-degree-felony escape offense. (Doc. 7, Ex. 2).

2. Trial counsel failed to properly explain the consequences of entering a guilty plea to the crime[s] charge[d], and coerced his client into a plea agreement he was not satisfied with, or even understood.

(*Id.*).

On May 16, 2007, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 13).

Petitioner commenced the instant action in February 2008. He alleges as grounds for federal habeas relief the same two claims that he presented to the state courts in the delayed appeal proceedings. (Doc. 1, Attachment #1, pp. 6-7, 16-19).

In the return of writ, respondent concedes that the petition was timely filed and that the petition does not pose any exhaustion or waiver concerns. (Doc. 7, Brief, pp. 5-8). Respondent contends that petitioner is not entitled to relief based on the merits of his claims. (*Id.*, pp. 10-19).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground One That His Guilty Plea To A Stipulated Sentence Was Rendered Invalid By The Ohio Supreme Court's Decision In *Foster*

In Ground One of the petition, petitioner alleges that he did not enter his guilty plea knowingly and voluntarily because he agreed to a sentence under provisions of Ohio's sentencing statute that were declared unconstitutional by the Ohio Supreme Court in *Foster* in light of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). (Doc. 1, Attachment #1, pp. 6, 16-17).

The Ohio Court of Appeals was the only state court to issue a reasoned decision rejecting this claim. The court reasoned in relevant part as follows:

> We have limited ability to review agreed sentences. We recently stated in [another case] that, "[u]nder R.C. 2953.08(D), an agreed sentence is not subject to appellate review if it is authorized by law. A sentence is

3

authorized by law if it is within the statutory range of possible sentences and does not exceed the maximum term authorized for the offense. This statute prevents an appellate court from reviewing any agreed sentence as long as it is within the statutory range, even if it implicates *Foster*."... The Eighth Appellate District has come to the same conclusion....

Canady's sentence was authorized by law. The terms of incarceration he received were within the statutory ranges allowed, and none exceeded the maximum term allowed. The statutory range of prison terms for a second-degree felony is two to eight years and for a fifth degree felony, six to twelve months.

We acknowledged in [the prior case] that while we are foreclosed from reviewing an agreed sentence, we are not prevented from reviewing the validity of the plea leading to the agreed sentence. Constitutional principles require that a guilty plea be made "knowingly, intelligently, and voluntarily." Crim.R. 11(C) "was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review."

Moreover, we do not believe that the changes *Foster* made in Ohio's sentencing scheme have any effect on whether a plea is voluntary. *Foster* did not change Crim.R. 11 or the basic elements of any offense. Nor did it change the basic prison terms provided in R.C. 2929.14(A) or any other penalty.

The record shows that when Canady pleaded guilty, the court personally addressed him and strictly complied with Crim.R. 11(C) prior to accepting his guilty plea and finding him guilty. Canady even acknowledges in his brief that "the trial court appeared to comply with Criminal Rule 11 at the time of the plea and sentencing."

The trial court's Crim.R. 11(C) explanation to Canady included the following. The court explained the meaning of a guilty plea and that after accepting the plea, the court could proceed to judgment and sentence. The court further explained that Canady's sentence would be seven years in prison and determined that no inappropriate promises or threats had been made to induce Canady's plea. It also explained to him

4

the maximum penalties for each of the charges to which he was pleading guilty, telling him that he faced up to a maximum of 17 consecutive years in prison.

The court explained that judicial release was not possible during mandatory prison time and that the time would be served without good-time reduction. Canady was told he would face court costs, restitution, and a lifetime driver's license suspension. Community-control and post-release-control matters, as well as the penalty for violating post-release control, were explained to Canady. The court also informed Canady of the penalty if he committed a new felony while on post-release control. Canady was asked whether and affirmed that he understood the charges and the possible penalties.

Canady was specifically informed by the court that the agreed sentence meant he would serve a sentence of seven years and that he would not be "eligible for intensive prison programs, transitional control, judicial release or other early release." Defense counsel, the prosecutor, and Canady then addressed the court on the agreed sentence. Then, the court addressed Canady, stating, "Thank you, Mr. Canady. Do you have any other questions, or is there anything else that you'd like to ask the court or to consult with [your attorney]." Canady replied, "No, ma'am."

The trial court then advised Canady of his constitutional rights. The court informed him, "Sir, I want to review with you certain rights you have, and I want to make sure that you understand that, by pleading guilty, you are giving up those rights." The court advised Canady that he had a right to a jury trial; that at trial, the prosecutor would have to prove him guilty beyond a reasonable doubt; that Canady had a right to confront and cross-examine witnesses against him; that Canady could require witnesses to come to court by subpoena; and that he could not be compelled to testify against himself. The court explained that if Canady did not testify, his silence could not be commented on or used against him. In response to the court, Canady indicated that he had no questions about these rights. The court then asked Canady, "Do you wish to voluntarily waive those rights and enter pleas of guilty today?" Canady replied, "Yes, ma'am."

5

The written guilty plea that Canady signed also explained the potential penalties, the agreed sentence, and his rights. In response to questioning by the court, Canady indicated that he had read the document, discussed it with his attorney, understood it, and freely signed it.

The trial court stated, "I do find that Mr. Canady was informed of all his constitutional rights, and I find that he has made a knowing, intelligent, and voluntary waiver of those rights. I also find that Mr. Canady understands the nature of the charges against him, the effect of his guilty plea, as well as the maximum penalty that can be imposed." The trial court went on to state, "Sir, I do find your pleas to be knowing and voluntary and intelligently made, and I will accept them." We agree with the trial court, and we overrule Canady's first assignment of error.

(Doc. 7, Ex. 10, pp. 3-6) (footnote citations omitted).

This Court is bound by and agrees with the state appellate court's determination that, as a matter of state law, *Foster* did not preclude the parties from entering a plea agreement, which included an agreed-to sentence falling within the statutory range;[2] nor did *Foster* have "any effect on whether a plea is voluntary" given that the decision did not address or otherwise change the plea colloquy requirements set forth in Ohio R. Crim P. 11; "the basic elements of any offense;" or "the basic prison terms provided in R.C. 2929.14(A) or any other penalty."

Indeed, the Ohio Supreme Court has held that under Ohio Rev. Code § 2953.08(D), "[o]nce a defendant stipulates that a particular sentence is justified, the sentencing judge need not independently justify the sentence." *State v. Porterfield*, 829 N.E.2d 690, 694 (Ohio 2005). In *Porterfield*, the state supreme court held that the trial court did not commit reversible error in failing to articulate both findings for imposing consecutive sentences and the reasons for those findings. In so ruling, the court explained:

---

[2]It is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations of state-law questions").

6

> Porterfield's sentence was entered pursuant to a plea bargain in which Porterfield agreed to the precise sentence that was imposed.... Porterfield's sentence was authorized by law, was recommended jointly by him and the prosecution, and was imposed by a sentencing judge. Pursuant to R.C. 2953.08(D), Porterfield's sentence is not subject to review.... The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. *Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.* Pursuant to R.C. 2953.08(D), the trial court's compliance with R.C. 2929.19 ... was not required.

*Id.* (emphasis added).

Although later, in *Foster,* the Ohio Supreme Court struck down several provisions of Ohio's sentencing statutes as unconstitutional in light of *Blakely,* § 2953.08(D) was not among the provisions severed.[3]

Because *Foster* did not "change the statutory range of punishments ..., any sentence imposed upon an offender that falls within the statutory range of available sentences still remains a sentence 'authorized by law' under Ohio Rev. Code § 2903.08(D)." *State v. Billups,* No. 06AP-853, 2007 WL 853335, at *2 (Ohio Ct. App. 10 Dist. Mar. 22, 2007) (unpublished); *see also Rockwell v. Hudson,* No. 5:06cv391, 2007 WL 892985, at *6 (N.D. Ohio Mar. 21, 2007) (unpublished) (citing *State v. Mathis,* 846 N.E.2d 1, 6 (Ohio 2006); *Porterfield,* 829 N.E.2d at 691(syllabus));

---

[3]Specifically, in *Foster*, the state supreme court held that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *Foster,* 845 N.E.2d at 490-94. It is noted, however, that the United States Supreme Court recently issued a decision upholding the constitutionality of a state sentencing statute which constrained the trial court's discretion by requiring it to find certain facts before imposing consecutive, rather than concurrent, sentences. *See Oregon v. Ice,* 129 S.Ct. 711 (2009). Although the *Foster* court held a similar provision in Ohio's sentencing statute was *Blakely*-offending, *see Ice,* 129 S.Ct. at 716 n.7, it now appears that in light of this recent Supreme Court precedent, no Sixth Amendment concerns are triggered with respect to consecutive sentencing decisions. *See Ice,* 129 S.Ct. at 717-20.

7

*Cornell v. Jeffries*, No. 2:05cv948, 2006 WL 2583300, at *8 (S.D. Ohio Sept. 7, 2006) (Smith, J.) (unpublished) (and numerous cases cited therein); *Chatman v. Wolfe*, No. 1:06cv280, 2007 WL 2852341, at *5-8 (S.D. Ohio Oct. 1, 2007) (Barrett, J.; Black, M.J.) (unpublished); *cf. Espinal v. Warden, Noble Corr. Instit.*, No. 1:05cv812, 2007 WL 1288175, at *9-10 (S.D. Ohio May 1, 2007) (Dlott, J.; Hogan, M.J.) (unpublished) (rejecting claims challenging agreed-to sentence under plea bargain that was entered voluntarily and knowingly). In addition, in other analogous cases, this Court has expressly rejected the argument that a sentence jointly agreed-to under the terms of a plea bargain is "not authorized by law" based on *Blakely* or *Foster*. *See, e.g., Taylor v. Warden, Ross Corr. Instit.*, No. 1:07cv860, 2009 WL 335278, at *12 n.5 (S.D. Ohio Feb. 10, 2009) (Spiegel, S.J.; Hogan, M.J.) (unpublished) (and numerous cases cited therein).

Accordingly, as the Ohio Court of Appeals reasonably determined in addressing petitioner's first claim of error, the Court concludes that petitioner is unable to challenge his guilty plea to an agreed sentence falling within the statutory range of available sentences for the charged offenses on the ground that the plea was rendered invalid by *Foster* and *Blakely*. Petitioner is not entitled to habeas relief based on such claim as alleged in Ground One of the petition.

## B. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Two That His Trial Counsel Coerced Him Into Unknowingly And Involuntarily Entering A Guilty Plea To A Stipulated Sentence

In Ground Two of the petition, petitioner alleges that he did not enter his guilty plea knowingly or voluntarily because his trial counsel "failed to properly explain the consequences" of the plea and "coerced [him] into a plea agreement he was not satisfied with, or even understood." (Doc. 1, pp. 7, 17-18). Specifically, petitioner contends that his counsel "failed to properly explain ... that [petitioner] was actually entitled to be sentenced to a minimum term of incarceration, and anything that exceeded the minimum sentence could be challenged on appeal." (*Id.*, p. 17). Petitioner claims that "[h]ad counsel properly explained the sentencing laws to [him], he would not have entered a guilty plea to the crimes charged." (*Id.*).

As discussed above, in addressing petitioner's first claim for relief on appeal, the Ohio Court of Appeals explicitly found that the trial court had personally addressed petitioner and "strictly complied" with Ohio R. Crim. P. 11(C) before accepting

8

petitioner's guilty plea. Indeed, the state appellate court provided a detailed account of the discussion the trial court had with petitioner on the record to ensure that petitioner's guilty plea was knowingly and intelligently made. *See supra* pp. 4-6.

Of particular relevance to the issue-at-hand, the trial court explained to petitioner at the plea hearing that his sentence "would be seven years in prison;" the "maximum penalties for each of the charges to which he was pleading guilty;" that he "faced up to a maximum of 17 consecutive years in prison" if he proceeded to trial and were found guilty on those charges; and that "the agreed sentence meant he would serve a sentence of seven years and that he would not be 'eligible for intensive prison programs, transitional control, judicial release or other early release.'" *See supra* pp. 4-5. As the Ohio Court of Appeals also pointed out, *see supra* p. 6, petitioner executed a written plea entry,which set forth the potential penalties on each charge, the agreed sentence and petitioner's rights, as well as petitioner's statement that he had "read this form and ... knowingly, voluntarily and intelligently enter this guilty plea." (*See* Doc. 7, Ex. 2).

In overruling petitioner's first claim of error, the Ohio Court of Appeals agreed with the trial court's finding after its extensive colloquy with petitioner that petitioner's guilty plea was "knowing and voluntary and intelligently made." *See supra* p. 6. In further rejecting petitioner's second related claim of error specifically directed at trial counsel's performance in inducing the plea, the state appellate court continued as follows:

> ...[T]he second assignment of error is based on issues Canady has raised himself, and it consists of two parts. In the first, Canady claims that he "was coerced and deceived by trial counsel into signing the guilty plea document, thus making his plea involuntary." This claim is rejected.
>
> The trial court personally addressed Canady throughout the plea proceedings, asked questions of him, and received intelligent responses. Canady gave no indication that he had been "coerced and deceived" by his attorney at any time. In fact, the record shows the opposite. Early in the plea proceedings, the court asked Canady if his attorney had "explained everything" and answered all his questions. Candady replied, "Yes, ma'am." Canady was then asked by the court, "And are you satisfied with your attorney?" Canady replied, "Yes, ma'am." In addition, and as we have already pointed out, Canady told the court that

9

he had read and discussed his written guilty plea with his attorney, understood the document, and freely signed it.

In the second part of this assignment of error, Canady claims that "[t]he sentence imposed by the trial court was in violation of *State v. Foster, Blakely v. Washington, U.S. [v.] Booker*." This issue has been adequately addressed under the first assignment of error. An agreed sentence, authorized by law, is not subject to appellate review.

(Doc. 7, Ex. 10, pp. 6-7).

Petitioner does not dispute that he was informed and understood the maximum penalty he faced or that he was agreeing to a mandatory seven-year prison sentence as a term of the plea bargain. He also does not dispute that he was informed of the rights he would be giving up by pleading guilty. His only contention is that his counsel should have informed him that by agreeing to the seven-year sentence, he was giving up his right to receive a minimum sentence and his right to appeal any sentence imposed in excess of the minimum.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.), *cert. denied*, 512 U.S. 1222 (1994). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ..., misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Id.* at 749; *King*, 17 F.3d at 153 (and cases cited therein).

10

Although neither the court nor defense counsel have a constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea, for a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir.), *cert. denied,* 502 U.S. 816 (1991).

Here, it is undisputed that petitioner was informed of the maximum sentence that could be imposed. Moreover, it appears clear from the Ohio Court of Appeals' detailed account of the plea colloquy, which also is uncontested, that petitioner had a "sufficient awareness of the relevant circumstances and likely consequences" of his plea.

It is conceded that when petitioner was sentenced, Ohio's sentencing statutes contained certain presumptive sentencing provisions that were later declared unconstitutional in *Foster* because, except in cases such as this involving an agreed sentence governed by Ohio Rev. Code § 2953.08(D), the trial court was required to make certain findings before non-minimum, consecutive sentences could be imposed. However, contrary to petitioner's contention, the trial court was not foreclosed either before or after *Foster* from imposing non-minimum, consecutive sentences; indeed, as the trial court explained to petitioner during the plea hearing, if petitioner were to proceed to trial, he faced a potential maximum aggregate prison sentence of seventeen years if convicted of all charges.

*Foster* did not effect any change in the potential maximum sentence petitioner faced. To remedy the constitutional infirmities found in Ohio's sentencing statutes, the *Foster* court adopted the approach used by the Supreme Court in *United States v. Booker,* 543 U.S. 220 (2005), with respect to the federal sentencing guidelines, of severing the *Blakely*-offending portions of Ohio's sentencing statutes and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See Foster,* 845 N.E.2d at 494-98. Therefore, to the extent petitioner could have raised a *Foster* claim on appeal if he had not entered the plea agreement to a stipulated sentence, he still faced the possibility of being re-sentenced to the maximum aggregate seventeen-year prison term.

Petitioner's trial counsel did not "coerce" petitioner into entering a guilty plea by failing to inform petitioner of a possible *Foster* claim before *Foster* was even

decided. In any event, it is clear from the record that petitioner was informed of and understood the maximum sentence he faced on the criminal charges and that a mandatory seven-year sentence would be imposed upon acceptance of his guilty plea, which was all that was required to establish that the plea was voluntarily entered by petitioner with a "sufficient awareness of the relevant circumstances and likely consequences." *See King,* 17 F.3d at 154; *Hart,* 927 F.2d at 259.

As the Ohio Court of Appeals found on appeal,[4] before accepting petitioner's guilty plea, the trial judge ensured that petitioner understood the nature and substance of the charges to which he was pleading, the maximum penalty he faced if he were to proceed to trial, and the sentence that would be imposed upon the court's acceptance of petitioner's guilty plea. The judge also ensured that petitioner understood the rights he was giving up by entering his guilty plea and that the plea was made knowingly and voluntarily in the absence of coercion. Petitioner's guilty plea was accepted only after the judge ascertained from petitioner that he understood the charges, possible penalties and mandatory nature of the agreed sentence; that he had no "other questions" for the court or his attorney; that his attorney had "explained everything" and answered all his questions; that he was satisfied with his counsel's representation; and that "he had read and discussed his written guilty plea with his attorney, understood the document, and freely signed it."

Accordingly, in sum, the undersigned concludes that petitioner's claim that he did not enter his guilty plea knowingly or voluntarily because his trial counsel "failed to properly explain the consequences" of the plea and "coerced [him] into a plea agreement he was not satisfied with, or even understood," lacks merit. (*See* Doc. 1, pp. 7, 17-18). Petitioner is not entitled to habeas relief based on such claim as alleged in Ground Two of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petitioner's petition for writ of habeas corpus pursuant to 28

---

[4]The state appellate court's findings, which petitioner has not attempted to refute, are presumed correct under 28 U.S.C. § 2254(e)(1), which provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."

12

U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which were addressed on the merits herein,[5] because petitioner has not made a substantial showing that he has stated "viable claim[s] of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/1/09

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2009 habeas orders\08-89denypet.gp-agreedsentence-iac-blakely-foster.wpd

---

[5]Because the adjudication of these claims does not involve a procedural ruling, the two-part test enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

13

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sorrell Canady,
    Petitioner

vs                                Case No. 1:08cv89
                                       (Barrett, J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X  ☑ Agent  ☐ Addressee<br>B. Received by (*Printed Name*)   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Sorrell Canady #496-916<br>Lebanon Corr. Inst.<br>P.O. Box 56<br>Lebanon, OH 45036 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)  ☐ Yes |
| 2. Article Number *(Transfer from service label)* | 7002 3150 0000 8388 4735 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-01-M-2509

1:08cv84 (Doc. 8)